# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2716

_____

United States of America

*Plaintiff - Appellee*

v.

Bernard Laverne Boston

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 14, 2018
Filed: July 20, 2018
[Unpublished]

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

PER CURIAM.

Bernard Laverne Boston ("Boston") appeals from the district court's[1] judgment sentencing him to thirty months of imprisonment, arguing the district court errantly applied an identity theft Guidelines enhancement.

## I. Background

The investigation uncovering Boston's crime began when a homeless man in Iowa met with a law enforcement officer after unsuccessfully trying to cash a suspicious check made out to him from a local business.[2] The homeless man told the officer he had been instructed to cash the check by four individuals. After the meeting, he arranged to obtain and cash another check so law enforcement officers could monitor the meeting. The homeless man then met two individuals, including Boston, in a Dodge Caravan at a gas station parking lot.

Boston and the rest of the group, joined by a second homeless man, picked up several papers from the driver of a Chrysler Town and Country. Officers observed the second homeless man attempt to enter First State Bank and, upon arresting him, found he possessed a check from Consolidated Vending Co. The officers then stopped both Boston's Dodge Caravan and the Chrysler Town and Country.

A search of the vehicles revealed a typewriter and several complete and partial stolen business checks. One of the partial checks, which listed Consolidated Vending Co. as the account holder, contained the same account and routing numbers as the

---

[1] The Honorable Rebecca Goodgame Ebinger, United States District Court for the Southern District of Iowa.

[2] This case deals with an organized nationwide scheme involving criminal groups that manipulate homeless people into cashing counterfeit checks. *United States v. Weaver*, 866 F.3d 882, 883 (8th Cir. 2017). The counterfeit checks are usually manufactured using stolen business checks, a printing device, and the personal information of homeless individuals.

check found in the second homeless man's possession. Several of the checks in Boston's vehicle were also made out to the second homeless man. The *modus operandi* of Boston and his co-defendants was to use the account numbers, routing numbers, and account holder information from stolen business checks to create counterfeit checks. They then recruited homeless persons to cash the checks, after substituting the names of these individuals in place of the former payees.

## II. The Sentencing

A grand jury indicted Boston and four co-defendants, charging them with Conspiracy, in violation of 18 U.S.C. §§ 371, 1029 (a)(6), and Theft and Receipt of Stolen Mail, in violation of 18 U.S.C. § 1708. Boston pled guilty to the Theft and Receipt of Stolen Mail charge and, in exchange, the government agreed to dismiss the Conspiracy charge. In the plea agreement, Boston admitted to possessing stolen checks from four businesses including Consolidated Vending Co.

At the sentencing hearing, the district court applied a two-level identity theft "means-of-identification" enhancement to Boston's total offense level pursuant to the U.S. Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") § 2B1.1(b)(11)(C)(i). The district court concluded, over Boston's objections, that this case is controlled by *United States v. Norwood,* 774 F.3d 476 (8th Cir. 2014), where this Court held the means-of-identification enhancement applied when existing bank account and routing information was copied onto counterfeit checks in a similar scheme. After applying the enhancement, the district court calculated a sentence range of 30-37 months and sentenced Boston to 30 months of incarceration. Boston appeals, arguing that *Norwood* is distinguishable and that the district court improperly applied the sentencing enhancement.

## III. Standard of Review

We review the district court's application of the Guidelines and imposition of sentencing enhancements de novo. *United States v. Scott,* 448 F.3d 1040, 1043 (8th Cir. 2006) (citing *United States v. Noe*, 411 F.3d 878, 888 (8th Cir. 2005)). We review factual findings for clear error. *United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005) (citing *United States v. Hart*, 324 F.3d 575, 579 (8th Cir. 2003)).

## IV. Discussion

Section 2B1.1(b)(11)(C)(i) of the Guidelines applies to "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." The term "means of identification" refers to "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *See* U.S.S.G. § 2B1.1, cmt. n.1 (incorporating the definition from 18 U.S.C. 1028(d)(7)). The means of identification "shall be of an actual (*i.e.* not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under U.S.S.G. § 1B1.3." *Id.* The term "produce" includes "manufacture, design, alter, authenticate, duplicate, or assemble." U.S.S.G. § 2B1.1, cmt. n.10(C)(iii). This enhancement "was originally designed to combat the harm 'which results from using someone's identifying information to establish new credit.'" *Norwood*, 774 F.3d at 480 (quoting *United States v. Williams*, 355 F.3d 893, 900 (6th Cir. 2003)).

We disagree with Boston's contention that his case is distinguishable from *Norwood* in any relevant manner. In *Norwood*, a case involving the same general scheme, we upheld a means-of-identification enhancement where bank account and routing numbers of businesses and their banks, respectively, were copied onto counterfeit checks. 774 F.3d at 482. We concluded that "produce" "include[s]

duplicating a means of identification such as a bank account number and transferring it onto a new medium, such as a counterfeit check." *Id.* *See also United States v. Alexander*, 725 F.3d 1117, 1119-20 (9th Cir. 2013) (finding that a counterfeit check with an individual's name, bank account number, and bank routing number is a means of identification). We adopted the Third Circuit's analysis in *United States v. Newsome*, 439 F.3d 181 (3d Cir. 2006), which stated "[t]he phrase 'any other means of identification' . . . does not mean 'different' as [the defendant] would read it. Rather, it is a broader phrase meaning 'additional' as evinced by the Commentary's definition of 'produce' as including 'manufacture, design, *alter*, authenticate, *duplicate*, or assemble." *Norwood*, 774 F.3d at 481 (quoting *Newsome*, 439 F.3d at 185) (emphasis in original) (quoting U.S.S.G. § 2B1.1, cmt. n.9(A)(2006) (current version at U.S.S.G. § 2B1.1, cmt. n.10(A)(2016)). This Court reaffirmed the holding in *Norwood* in a recent case dealing with the same scheme. *See United States v. Weaver*, 866 F.3d 882, 884 (8th Cir. 2017).

The actions of Boston and his co-defendants fit squarely within the language of *Norwood* because they transferred the real bank account and routing numbers (means of identification) of real companies, such as Consolidated Vending Co., onto counterfeit checks (a new medium). Thus, Boston's argument that he did not produce any *other* means of identification is foreclosed by our holding in *Norwood* that "any other means of identification" includes not only different, but also additional duplications of the same information. 774 F.3d at 481.

We also reject Boston's argument that the enhancement only applies when the defendant uses a means of identification to create a new identification "so that the defendant can hold him or herself out to be the other person" and that his conduct is "more akin" to forging a signature on a stolen check. Since Boston did not hold himself out as any of the stolen account holders, he argues the enhancement should not apply. First, we note the plain language of the Guidelines does not detail any such requirement. *See* U.S.S.G. § 2B1.1(b)(11)(C)(i). Boston simply infers the

requirement based on his reading of the four examples provided in the commentary section of the Guidelines regarding when the enhancement applies. We disagree with his reading of the examples because we do not believe the purpose of these examples is to limit the application of the enhancement in the way Boston contends. Rather, they provide two examples of what constitutes producing a new means of identification (using a means of identification to obtain a bank loan or a credit card in that person's name) and two examples of what does not (using a stolen credit card or forging another person's signature on a stolen check). U.S.S.G. § 2B1.1, cmt. n.10(C)(ii)-(iii). These examples clarify that a means of identification must be used to produce a new means of identification in order for the enhancement to apply. Nothing in those examples indicates an intent to create some new requirement for the enhancement not present in the Guideline. *Norwood* defined the relevant terms in the Guideline and the district court followed those definitions. It properly rejected Boston's attempt to add a new requirement to the Guideline. We affirm.

_____